Lisa Bloom (SBN 158458)
Arick Fudali (SBN 296364)
Alan Goldstein (SBN 296430)
The Bloom Firm
26565 Agoura Road Suite 200
Calabasas, CA 91302
Telephone: (818) 914-7319
Facsimile: (866) 884-8079
Avi@TheBloomFirm.com
Attorneys for Plaintiff JOHN PARISH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PARISH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA HIGHWAY PATROL, a Law Enforcement Agency of the State of California ("CHP"); COUNTY OF VENTURA; VENTURA COUNTY SHERIFF'S OFFICE; CHP OFFICER ADRIEN AYON, identification number 20849; CHP OFFICER JED JOHNSTON, identification number 20641; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. UNREASONABLE SEIZURE (42 U.S.C. § 1983)<br>2. FALSE ARREST (CAL. CONST. ARTICLE I §13)<br>3. EXCESSIVE USE OF FORCE (42 U.S.C. § 1983)<br>4. POLICY AND CUSTOM OF USE OF EXCESSIVE FORCE/ *MONELL* CLAIM (42 U.S.C. § 1983 )<br>5. FAILURE TO TRAIN AND SUPERVISE (42 U.S.C. § 1983)<br>6. FAILURE TO PROVIDE MEDICAL TREATMENT (42 U.S.C. § 1983)<br>7. FAILURE TO PROVIDE MEDICAL TREATMENT (CAL. GOV. CODE § 845.6)<br>8. VIOLATION OF THE BANE ACT (CAL. CIV. CODE § 52.1) |

9. BATTERY
10. FAILURE TO PERFORM MANDATORY DUTY (CAL. GOV. CODE § 815.6)
11. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
12. NEGLIGENCE
13. NEGLIGENT SUPERVISION, TRAINING, HIRING AND RETENTION

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. Defendants broke the arm of a nonviolent 79-year-old man in their custody, a man they'd been told suffers from hearing loss, vertigo, diabetes and who previously had cancer. Then they refused him medical attention despite his many pleas for it. As a result, the elderly man, John Parish, suffered excruciating pain and became incapacitated, unable to care for himself, his elderly wife, and his special needs daughter.

## PARTIES

2. Plaintiff John Parish ("Plaintiff" or "Mr. Parish") is, and at all times mentioned herein was, a resident of the State of California and County of Ventura.

3. Defendant California Highway Patrol ("CHP") is, and at all times relevant herein was, a law enforcement agency organized under the laws of the State of California. At all relevant times, CHP was a branch or agency of the State of California.

4. Defendant Ventura County Sheriff's Office ("VCSO") is, and at all times relevant herein was, a law enforcement agency organized under the laws of the State of California.

5. Defendant County of Ventura (the "County") is a municipality duly organized under the laws of the State of California. Plaintiff is informed and believes and thereon alleges that all relevant times, the County and its employees are responsible for supervising all County detention centers, for providing adequate training and supervision to its employees and other staff, for making sure that complaints of excessive force and constitutional violations are adequately investigated, and for following policies regarding use of force.

6. Upon information and belief, Defendant CHP Officer Adrien Ayon ("Officer Ayon") is an individual domiciled in the State of California. At all times pertinent and relevant to this action, Officer Ayon was employed as a police officer by the CHP and at all times mentioned herein acted in the course and scope of his employment and under color of law. Officer Ayon is sued in his individual capacity.

7. Upon information and belief, Defendant CHP Officer Jed Johnston ("Officer Johnston") is an individual domiciled in the State of California. At all times pertinent and relevant to this action, Officer Johnston was employed as a police officer by the CHP and at all times mentioned herein acted in the course and scope of his employment and under color of law. Officer Johnston is sued in his individual capacity.

8. The true names and capacities, whether individual, public entity, corporate, associate or otherwise, of Defendants Does 1 through 100 ("Doe Defendants"), inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. Defendants Does 1 through 100, inclusive, are public entities and/or duly authorized employees and/or agents of CHP, the County and VCSO or other public entities. When the true names and capacities of said defendants are ascertained, Plaintiff will seek leave of this Court to amend the Complaint to allege their true names and capacities. Plaintiff is informed and believes, and thereon alleges, that each defendant designated herein

as a Doe is responsible in some manner for each other defendant's acts, omissions and for the resulting injuries and damages to Plaintiff, as herein alleged.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343 because the controversy arises under the U.S. Constitution and 42 U.S.C. § 1983. This Court has authority to award attorney's fees pursuant to 42 U.S.C. § 1988.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this complaint happened in this district.

## FACTUAL ALLEGATIONS

11. On March 16, 2022, at approximately 2:30AM, Mr. Parish and his daughter, Ashley, were driving back home on the 101 freeway from a restaurant in Thousand Oaks. CHP signaled them to exit the freeway and Mr. Parish complied. After exiting the freeway, Mr. Parish pulled over to the curb with CHP behind him. Officer Ayon and Officer Johnston were the officers at the scene.

12. Ashley explained to Officer Ayon that her father was old, sick and had not eaten anything for several hours. Mr. Parish elaborated on his condition by telling Officer Ayon that he is old, has a lack of balance, has vertigo, had recently suffered a concussion, experiences dizziness when he stands up, had recently fallen several times, has hearing problems and has diabetes. Mr. Parish also informed Officer Ayon that he previously had cancer. Mr. Parish told Officer Ayon that in the last forty-eight hours, he had not slept and had eaten nothing but a bowl of cereal.

13. Officer Ayon then ordered Mr. Parish to take a field sobriety test. The test was administered under inappropriate conditions, i.e., a lack of lighting and a severely sloped sidewalk (on a hill). While taking the test, Mr. Parish lost his

balance on account of his overall lack of balance, his vertigo and his food and sleep deprivation.

14. Officer Ayon then offered Mr. Parish two options: 1) take a breath analyzer test at that moment or 2) test his blood alcohol content at a hospital. Mr. Parish chose the first option.

15. After breathing into the breathalyzer tube, Officer Ayon said it did not register anything and instructed Mr. Parish to breathe harder. Mr. Parish complied but the second reading also purportedly did not register anything. Officer Ayon instructed Mr. Parish to breathe even harder so that he could purportedly get a reading. Mr. Parish breathed in and then breathed out an exaggerated, hard breath which purportedly generated a BAC of .08%.

16. CHP then arrested Mr. Parish. Despite Mr. Parish's old age, vertigo and completely non-threatening disposition, Officer Ayon forced Mr. Parish's hands behind his back and handcuffed him. CHP gave him no explanation as to why he was handcuffed in the more strenuous behind-the-back manner. Approximately five minutes later, Mr. Parish told him that the handcuffs were too tight and that his arms were in great pain, but Officer Ayon ignored him. CHP failed to remove, adjust or re-position the handcuffs.

17. At no point did Mr. Parish physically or verbally threaten the officers, or anyone.

18. The handcuffs were presumably not double-locked to prevent tightening, and the tight handcuffs caused unnecessary and terrible pain to Mr. Parish. Being handcuffed too tightly behind his back was too much for Mr. Parish's 79-year old body to bear.

19. Officer Ayon accompanied Mr. Parish inside the holding area of the Ventura County Main Jail, operated by the County and VCSO. There, Mr. Parish was forced to wait a long period of time to be processed while he remained handcuffed from behind. While waiting, after approximately ten minutes, Mr.

Parish again expressed to Officer Ayon that the handcuffs were causing him great pain. Despite being in an area that was totally enclosed and locked, Officer Ayon failed to remove, adjust or re-position the handcuffs, and he failed to summon medical help. Instead, he walked away.

20. Eventually, Mr. Parish was processed and placed in a jail cell. About one hour later, Mr. Parish expressed to a jail employee that he believed his arm was broken and that he would like to have a doctor examine his arm. The employee did not respond other than motioning that he needed to go somewhere and that he would come back. Forty minutes later, Mr. Parish saw another jail employee and asked him for medical help. The employee said that he will "go check on it." Twenty minutes later, another employee came by. Mr. Parish got his attention and asked him for medical aid for his arm. This employee also said that he'll "go check on it."

21. Finally, approximately fifteen minutes later, he was brought to an adjacent room to meet with a doctor. She examined him, and said she could not tell if his arm was broken, but only that it is injured and that "it may be broken." Then Mr. Parish was released.

22. After he was released, Mr. Parish went to an urgent care facility where it was confirmed that his arm was indeed broken. He then went to Los Robles Regional Medical Center to get further medical attention. The next day, he went to an orthopedic surgeon.

23. For several months, Mr. Parish underwent physical therapy twice per week to rehabilitate his arm.

24. As a result of Mr. Parish's broken arm at his advanced age, he was highly incapacitated and dependent on his wife. He could not dress himself and struggled to go to the bathroom. Mr. Parish could not contribute to the care of his high-needs daughter, Ashley. He watched as his wife took care of both himself and Ashley. Given Ashley's condition, both Mr. Parish and his wife needed to be in

good health to care for her. The gruesome injury to Mr. Parish's arm put a great deal of strain on his family.

25. Mr. Parish's mistreatment by Defendants and the resulting injuries has caused him considerable emotional distress. In his 79-year life, he never experienced such a traumatic and painful experience. His dependence on his wife for daily physical needs has been extremely difficult to bear. He watched as his life partner became overburdened and on the verge of collapse while caring for both him and their high-needs daughter. Mr. Parish underwent chronic stress and experienced feelings of powerlessness, anxiety, and overwhelm at being unable to support his family.

26. Mr. Parish constantly feels overall tightness in his arm as well as nerve pain that runs down to his hand. He cannot fully extend his arm. While he has seen improvement, doctors had recently advised Mr. Parish that his arm would not improve any more.

## Exhaustion of Administrative Remedies

27. On September 8, 2022, Mr. Parish submitted notices of Government Claims to CHP, VCSO and the County.

28. On October 7, 2022, CHP rejected Mr. Parish's notice of Government Claim. On October 19, 2022, the County rejected Mr. Parish's notice of Government Claim. On November 8, 2022, VCSO rejected Mr. Parish's notice of a Government Claim.

## FIRST CAUSE OF ACTION
## UNREASONABLE SEIZURE OF PERSON IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. § 1983)
## (Against CHP, Officer Ayon and Officer Johnston)

29. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

///

30. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

31. While acting under the color of law, Officer Ayon and Officer Johnston, jointly and severally, deprived Mr. Parish of clearly established rights secured to him under the United States Constitution— specifically the Fourth Amendment rights to be free from unreasonable seizure.

32. Officer Ayon did not have probable cause to arrest Mr. Parish. Before administering the field sobriety test, Mr. Parish and his daughter had told Officer Ayon that Mr. Parish was old, lacked balance, had vertigo, had fallen several times, suffered a concussion a couple months prior, previously had cancer, had not eaten anything in the past forty-eight hours other than a bowl of cereal hours prior and that he had not slept in forty-eight hours. Despite knowing that, Officer Ayon instructed Mr. Parish to take a field sobriety test. Moreover, the test was administered under inappropriate conditions, i.e., a lack of lighting and a severely sloped sidewalk (on a hill). Indeed, Mr. Parish lost his balance on account of these factors.

33. Officer Ayon then administered the Preliminary Alcohol Screening test. After the first two blows purportedly did not produce a reading, Officer Ayon instructed Mr. Parish to blow harder on the third "attempt." Upon information and belief, Officer Ayon knew that blowing hard affects the accuracy of breathalyzer tests.

34. Upon a .08% BAC reading on the third, exaggerated breath, Officer Ayon arrested Mr. Parish. By unlawfully and unreasonably seizing Mr. Parish without probable cause, Officer Ayon violated Mr. Parish's Fourth Amendment

right to be secure in his person and property against unreasonable searches and seizures.

35. By failing to intercede to prevent this unlawful and unreasonable seizure, Officer Johnston also violated Mr. Parish's Fourth Amendment right to be secure in his person and property against unreasonable seizures.

36. As a proximate and foreseeable result of CHP's, Officer Ayon's and Officer Johnston' violations of Mr. Parish's Fourth Amendment rights, Mr. Parish has suffered, is suffering, and will continue to suffer injuries, including but not limited to continued invasion of privacy, humiliation, emotional distress, anxiety, stigma, and embarrassment.

**SECOND CAUSE OF ACTION**
**FALSE ARREST (CAL. CONST. ART. I, SECTION 13)**
**(Against CHP, Officer Ayon and Officer Johnston)**

37. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

38. CHP, through Officer Ayon and Officer Johnston, arrested Mr. Parish without probable cause as discussed above.

39. Mr. Parish was actually harmed, both physically and emotionally.

40. CHP's conduct, through Officer Ayon and Officer Johnson, was a substantial factor in causing Mr. Parish's harm.

**THIRD CAUSE OF ACTION**
**EXCESSIVE USE OF FORCE IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. § 1983)**
**(Against Officer Ayon and Officer Johnston)**

41. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

42. While acting under the color of law, Officer Ayon and Officer Johnston, jointly and severally, deprived Mr. Parish of clearly established rights secured to him

under the United States Constitution— specifically the Fourth Amendment rights to be free from the use of excessive force against one's person.

43. Officer Ayon pulled the hands of Mr. Parish, a 79-year old man, behind his back and locked them in handcuffs. After Mr. Parish complained of excessive pain, Officer Ayon and Officer Johnston failed to remove, adjust or re-position the handcuffs.

44. Officer Ayon's excessive use of force in handcuffing Mr. Parish from the back rather than the front was unreasonable. Officer Johnston's failure to intercede was also unreasonable. Officer Ayon and Officer Johnston knew that Mr. Parish was elderly and that handcuffing an elderly person (who generally have weaker bones) would unnecessarily cause him great bodily harm. Despite this awareness, Officer Ayon nonetheless handcuffed Mr. Parish from behind the back and Officer Johnston did not intercede. This application of force was disproportionate in the circumstances because Mr. Parish posed no threat or danger to the arresting officers or anyone else; and was not resisting arrest or attempting to flee.

45. Officer Johnston was present at the scene and witnessed the use of excessive force by Officer Ayon against Mr. Parish. Though he had a reasonable opportunity to intervene in order to prevent or mitigate injury to Mr. Parish, he chose not to intervene. His failure to intervene violated Mr. Parish's constitutional rights.

46. Officer Ayon committed acts constituting excessive force which proximately caused harmful or offensive contact with Mr. Parish's person.

47. Officer Johnston failed to intervene to prevent Officer Ayon's excessive force upon Mr. Parish or mitigate the harm already inflicted, thereby proximately causing the perpetuation of the harmful or offensive contact with Mr. Parish's person.

48. Officer Johnston and Officer Ayon are jointly and severally liable for Mr. Parish's injuries.

///

49. Officer Johnston and Officer Ayon each had a duty to Mr. Parish to act with ordinary care and prudence so as not to cause harm or injury to him.

50. By engaging in the acts alleged herein, Officer Johnston and Officer Ayon failed to act with ordinary care and breached their duty of care owed to Mr. Parish by, in part, using unreasonable and unnecessary force to restrain him.

51. Any reasonable police officer in the position of Officer Ayon and Officer Johnston would have known that the force being used against Mr. Parish was unconstitutional.

52. Any reasonable police officer in the position of Officer Ayon and Officer Johnston would have known that they had a duty to take reasonable measures to prevent and mitigate harm to Mr. Parish.

53. As a direct, proximate and foreseeable result of Officer Ayon's and Officer Johnston's breach of their duty of care, Mr. Parish has suffered damages in an amount according to proof at the time of trial.

54. Said harmful or offensive contact by Officer Ayon and Officer Johnston included the use of unreasonable force under the totality of the circumstances, including the harmlessness of Mr. Parish's conduct and disposition, the lack of any threat posed by Mr. Parish, and the fact that Mr. Parish was not actively resisting arrest or attempting to evade arrest.

55. Said harmful or offensive contact caused injury, damage, loss, and/or harm to Mr. Parish as alleged herein.

56. Mr. Parish is informed and believes and thereon alleges that the aforementioned acts of Officer Ayon and Officer Johnston were willful, malicious, intentional, oppressive, reckless, and/or were done with willful and conscious disregard of the rights, welfare and safety of Mr. Parish, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial against any non-government entity Defendants.

///

57. As a direct and legal result of the acts and omissions of Officer Ayon and Officer Johnston, Mr. Parish has suffered physical injury and physical sickness, loss of enjoyment of life, pain and suffering, humiliation, fear, anxiety, torment, degradation, embarrassment, shock, loss of self-esteem, medical expenses, severe mental and emotional distress, and other pecuniary and non-pecuniary losses. Mr. Parish has sustained serious and permanent injuries, which will likely result in permanent disability.

**FOURTH CAUSE OF ACTION**

**POLICY AND CUSTOM OF USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT/ *MONELL* CLAIM (42 U.S.C. § 1983)**

**(Against CHP, County of Ventura, VCSO and DOES 1 through 100)**

58. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

59. At all times relevant to this action, CHP, the County and VCSO had policymaking authority and otherwise developed unofficial customs.

60. CHP, the County and VCSO have a policy, practice and custom of handcuffing arrestees from behind the back, and keeping them handcuffed in that manner, even when the arrestees do not pose any threat or risk of flight.

61. CHP's HPM 70.6, Annex C (Compliance with Government Code Section 7286), at 1(c)(1) (p.1-26) provides, in relevant part, as follows:

> Handcuffing Requirements. All persons arrested on a charge requiring incarceration shall be handcuffed. Handcuffs should be applied with the subject's hands in position to the rear.
>
> (a) Exceptions. At the officer's discretion, the following persons may be exempted from handcuffing to the rear:
>
> 1 Sick, injured, or disabled. Handcuffs should be secured in a manner that would not aggravate the person's condition.
>
> 2 Elderly.
>
> 3 Visibly pregnant.

62. Ventura County SO Policy Manual, Policy 301.3 (Use of Restraints) provides, in relevant part, as follows:

When deciding whether to use any restraint, deputies should carefully balance officer safety concerns with factors that include, but are not limited to:

- The circumstances or crime leading to the arrest.
- The demeanor and behavior of the arrested person.
- The age and health of the person.
- Whether the person is known to be pregnant.
- Whether the person has a hearing or speaking disability. In such cases, consideration should be given, safety permitting, to handcuffing to the front in order to allow the person to sign or write notes.
- Whether the person has any other apparent disability.

63. CHP, the County and VCSO knew or should have known that, in arrests involving non-threatening elderly citizens, their officers, employees and other staff have a clear constitutional duty to avoid excessive force by handcuffing the arrestee from the front rather than the back.

64. CHP, the County and VCSO, through their policies, practices and customs, acted with deliberate indifference to the clearly established rights secured to Mr. Parish under the United States Constitution, specifically the Fourth Amendment rights to be free from the use of excessive force against one's person.

65. Officer Ayon acted pursuant to a policy, practice and/or custom by handcuffing Mr. Parish behind his back despite Mr. Parish's old age and the lack of any imposed threat.

66. Officer Johnston acted pursuant to this policy, practice and/or custom by not intervening when Officer Ayon handcuffed Mr. Parish behind his back despite Mr. Parish's old age and the lack of any threat.

67. The County and VCSO officers, employees and staff acted pursuant to this policy by not timely removing the behind-the-back handcuffs from Mr. Parish.

68. CHP's policy, practice and custom of handcuffing arrestees from behind the back precipitated Officer Ayon's handcuffing of Mr. Parish's arms behind his back despite Mr. Parish's old age and despite the lack of any imposed threat.

69. CHP's policy, practice and custom of handcuffing arrestees from behind the back precipitated Officer Johnston's failure to intervene when Officer Ayon

handcuffed Mr. Parish's arms behind his back despite Mr. Parish's old age and the lack of any imposed threat.

70. The County's and VCSO's policies, practices and customs of keeping arrestees handcuffed behind their back precipitated their indifference to Mr. Parish's arms remaining behind his back despite Mr. Parish's old age and the lack of any imposed threat.

71. CHP, the County and VCSO knew or should have known of the fact that a pattern of excessive force exists within their ranks, yet they have not taken sufficient steps or made sufficient efforts to halt this course of conduct, including but not limited to disciplinary action against the offending officers, employees and staff.

72. CHP's, the County's and VCSO's policies, practices and customs of handcuffing arrestees from behind the back and keeping arrestees handcuffed behind their back were a proximate cause of Mr. Parish's injuries.

73. Mr. Parish's injuries resulted from the implementation or execution of a policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.

74. Due to the injuries suffered by Mr. Parish, he is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial. As a further result of CHP's, the County's and VCSO's unlawful conduct, Mr. Parish has incurred special damages, including expenses related to the disability caused by his injuries. He may continue to incur other expenses and other special damages, in amounts to be established at trial.

75. Mr. Parish is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

76. In depriving Mr. Parish of his rights under the United States Constitution, CHP, the County and VCSO acted under color of law in its capacity as municipal entities organized under the laws of California, and their actions and omissions were conducted within the scope of their official duties.

77. Mr. Parish is informed and believes and thereon alleges that the aforementioned acts of CHP, the County and VCSO, including DOES 1 through 100, were willful, malicious, intentional, oppressive, reckless, and/or were done with willful and conscious disregard of the rights, welfare and safety of Mr. Parish, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial against any non-government entity Defendants.

78. As a direct and legal result of the acts and omissions of CHP, the County and VCSO, including DOES 1 through 100, Mr. Parish has suffered physical injury and physical sickness, loss of enjoyment of life, pain and suffering, disfigurement, humiliation, fear, anxiety, torment, degradation, embarrassment, shock, loss of self-esteem, medical expenses, severe mental and emotional distress, and other pecuniary and non-pecuniary losses. Mr. Parish has sustained serious and permanent injuries, which will likely result in permanent disability, the nature and extent of which has yet to be determined. Mr. Parish is informed and believes and thereon alleges that he will continue to incur medical expenses in the future, the amount of which is not presently ascertained.

## FIFTH CAUSE OF ACTION
## FAILURE TO TRAIN AND SUPERVISE (42 U.S.C. § 1983)
## (Against CHP, County of Ventura, VCSO and DOES 1 through 100)

79. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

80. At all times relevant to this action, CHP, the County and VCSO controlled the training and supervisory practices of their officers, employees and staff.

81. CHP, the County and VCSO failed to train and supervise their officers, employees and staff with respect to a clear constitutional duty implicated in a recurrent situation that they are certain to face—i.e., the routine handcuffing of arrestees from behind the back who pose no threat or risk of flight and the post-arrest handling of said arrestees.

82. Upon information and belief, officers employed by CHP, the County and VCSO have a history of numerous complaints related to abusive handcuffing. This pattern of violations made plainly obvious the need for training and supervising officers on how to avoid using excessive force in handcuffing situations and on how to mitigate pain, especially to those arrestees who are elderly and do not pose a risk of harm to others

83. CHP, the County and VCSO should have known that their officers would be placed in such a recurrent situation. CHP, the County and VCSO should have known that in these situations, their officers, employees and staff have a clear constitutional duty to avoid excessive force by handcuffing elderly arrestees from the front rather than the back. And, if CHP, the County and VCSO already handcuffed an elderly arrestee in this improper manner, their officers, employees and staff have a clear constitutional duty to mitigate the harm by removing the behind-the-back handcuffs and applying them to the front of the arrestee's body. CHP, the County and VCSO should have known that their officers lack the training and supervision necessary to avoid the application of excessive force in these situations.

84. Upon information and belief, there is improper or insufficient training by CHP, the County and VCSO on proper handcuffing techniques for elderly arrestees who do not pose a risk of harm to others.

85. CHP's failure to properly train its officers precipitated Officer Ayon's handcuffing of Mr. Parish's arms behind his back despite Mr. Parish's old age and despite the lack of any threat to anyone.

86. CHP's failure to properly train its officers precipitated Officer Johnston's refusal to intervene when Officer Ayon handcuffed Mr. Parish's arms behind his back despite Mr. Parish's old age and despite the lack of any threat to anyone.

87. The County's and VCSO's failure to properly train their officers, employees and staff precipitated their indifference to Mr. Parish's arms remaining

behind his back despite Mr. Parish's old age and despite the lack of any threat to anyone.

88. CHP, the County and VCSO's failures to properly and adequately train and supervise their officers, employees and other staff were proximate causes of Mr. Parish's injuries.

89. Due to the injuries suffered by Mr. Parish, he is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial. As a further result of CHP's, the County's and VCSO's unlawful conduct, Mr. Parish has incurred special damages, including expenses related to the disability caused by his injuries. He may continue to incur other expenses and other special damages, in amounts to be established at trial.

90. Mr. Parish is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

91. In depriving Mr. Parish of his rights under the United States Constitution, CHP, the County and VCSO acted under color of law in its capacity as municipal entities organized under the laws of California, and their actions and omissions were conducted within the scope of CHP, the County and VCSO's official duties.

92. As a direct and legal result of the acts and omissions of CHP, the County and VCSO, including DOES 1 through 100, Mr. Parish has suffered physical injury and physical sickness, loss of enjoyment of life, pain and suffering, disfigurement, humiliation, fear, anxiety, torment, degradation, embarrassment, shock, loss of self-esteem, medical expenses, severe mental and emotional distress, and other pecuniary and non-pecuniary losses. Mr. Parish has sustained serious and permanent injuries, which will likely result in permanent disability, the nature and extent of which has yet to be determined. Mr. Parish is informed and believes and thereon alleges that he will continue to incur medical expenses in the future, the amount of which is not presently ascertained.

///

## SIXTH CAUSE OF ACTION

**FAILURE TO PROVIDE MEDICAL TREATMENT (42 U.S.C. § 1983)**
**(Against CHP, Officer Ayon, County of Ventura, VCSO and DOES 1 through 100)**

93. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

94. Following Mr. Parish's arrest, he was taken to Ventura County Main Jail in Ventura, California.

95. In the police vehicle, Mr. Parish complained of extreme pain to his arm. CHP, through Officer Ayon and Officer Johnston, downplayed the injury suffered by Mr. Parish, and deliberately neglected to call for medical assistance.

96. Said delay constituted deliberate indifference to Mr. Parish's serious and obvious medical needs, in violation of the Mr. Parish's rights under the Fourteenth Amendment to the United States Constitution. Moreover, such deliberate indifference violated the CHP's HPM 70.6, Chapter 1 (6) (Use of Force Medical Care Requirements).

97. At the holding area in the Ventura County Main Jail, Mr. Parish again announced that he was in pain. Officer Ayon downplayed the injury suffered by Mr. Parish, and deliberately delayed the medical staff from examining and treating Mr. Parish for said injuries for several hours.

98. Once Mr. Parish was in his jail cell, the County, VCSO and DOES 1-100 ignored two requests for medical assistance, thereby delaying his treatment and prolonging his pain and suffering.

99. Said delay constituted deliberate indifference to Mr. Parish's serious and obvious medical needs, in violation of the Mr. Parish's rights under the Fourteenth Amendment to the United States Constitution. Moreover, such deliberate indifference violated the County's/VCSO's Policy Manual § 300.6 (Medical Consideration).

///

100. As a direct and proximate result of the actions/omission of CHP, Officer Ayon, the County, VCSO and DOES 1-100, Mr. Parish: 1) was substantially physically, mentally and emotionally injured; 2) incurred, and will continue to incur, medical and psychological costs, bills and expenses, 3) suffered, and will continue to suffer terrible physical injury, pain and suffering, as well as mental and emotional pain and suffering, and 4) will incur and continue to incur other special damages and general damages; all in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**

**FAILURE TO PROVIDE MEDICAL TREATMENT (Cal. Gov. Code § 845.6)**

**(Against CHP, Officer Ayon, County of Ventura, VCSO and DOES 1 through 100)**

101. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

102. Defendants owed Mr. Parish a duty of care to provide for his immediate medical care.

103. The conduct of CHP, Officer Ayon, County of Ventura, VCSO and DOES 1 through 100 alleged herein, including but not limited to the fact that they knew or had reason to know that Mr. Parish was in need of immediate medical care and that they failed to take reasonable action to summon or provide care, resulting in Mr. Parish's injuries as alleged herein, in violation of California state law, including Cal. Govt. Code § 845.6.

104. CHP, Officer Ayon, County of Ventura, VCSO and DOES 1 through 100 failed to evaluate, diagnose and treat Mr. Parish's injuries related to his arrest and also failed to timely and appropriately respond to Mr. Parish's obvious signs of medical distress over an approximate three-hour period while he was locked in a patrol car and then in a jail cell with no medical care or treatment.

///

///

105. Moreover, CHP, Officer Ayon, County of Ventura, VCSO and DOES 1 through 100 failed to conduct any health screenings, to take any appropriate measures to treat Mr. Parish's arm and to appropriately monitor his health.

106. The alleged conduct of Officer Ayon and Does 1-100 was committed within the course and scope of their employment.

107. Said delay in examination and treatment of Mr. Parish resulted in a broken arm and/or continued pain and suffering.

108. Said delay in examination and treatment of Mr. Parish constituted the deliberate indifference to the Mr. Parish's serious and obvious medical needs, in violation of the Mr. Parish's rights under California Government Code Section 845.6.

109. As a direct and proximate result of the actions /omission of CHP, Officer Ayon, County of Ventura, VCSO and DOES 1 through 100, Mr. Parish: 1) was substantially physically, mentally and emotionally injured; 2) incurred, and will continue to incur, medical and psychological costs, bills and expenses, 3) suffered, and will continue to suffer terrible physical injury, pain and suffering, as well as mental and emotional pain and suffering, and 4) will incur and continue to incur other special damages and general damages; all in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF THE BANE ACT (CAL. CIV. CODE § 52.1)
## (Against All Defendants)

110. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

111. CHP, through Officer Ayon, placed handcuffs on Mr. Parish in a manner that constituted excessive, unjustifiable, and unreasonable force in violation of and interference with Mr. Parish's civil rights, including his right to be free from violence.

///

112. CHP, Officer Ayon, Officer Johnston, the County of Ventura, VCSO and DOES 1-100 refused to remove the handcuffs from Mr. Parish in a timely manner.

113. CHP, Officer Ayon, Officer Johnston, the County of Ventura, VCSO and DOES 1-100 denied Mr. Parish's rights under the Constitution of the United States, the laws of the United States, the Constitution of the State of California, and/or the laws of the State of California by the use of coercion. CHP, through officer Ayon, coerced Mr. Parish's hands behind his back to handcuff him. CHP, Officer Ayon, Officer Johnston, the County of Ventura, VCSO and DOES 1-100 failed to timely remove his handcuffs.

114. CHP, Officer Ayon, Officer Johnston, the County of Ventura, VCSO and DOES 1-100 intentionally interfered with Mr. Parish's rights including, without limitation: (a) Mr. Parish's statutory right to freedom from violence or intimidation; (b) Mr. Parish's statutory right to protection from bodily restraint or harm, pursuant to California Civil Code Section 43, which all Defendants interfered with and violated by the use of physical force against Mr. Parish that resulted in his injuries; (c) Mr. Parish's rights under the California Constitution, Article I, §1, which guarantees inalienable rights to persons, including "enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy"; and (d) Mr. Parish's rights to be free from battery and/or false arrest under California law, including without limitation, Penal Code Sections 236, 240 and 242.

115. CHP, Officer Ayon, Officer Johnston, the County of Ventura, VCSO and DOES 1-100 engaged in the acts alleged herein and/or condoned, permitted, authorized, directed, approved, and/or ratified the conduct of their officers, staff, employees, agents, and other representatives and are therefore vicariously liable for the wrongful conduct thereof.

///

116. CHP, the County of Ventura and VCSO are vicariously liable for the conduct of their officers, staff, employees, agents, and other representatives, and Does 1 through 100, pursuant to California Government Code Sections 815.2 and 820.

117. Mr. Parish is informed and believes and thereon alleges that the aforementioned acts were willful, malicious, intentional, oppressive, and despicable and/or were done in willful and conscious disregard of the rights, welfare, and safety of Mr. Parish, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial against any non-government entity Defendants.

118. As a direct and legal result of the aforementioned acts and omissions, Mr. Parish has suffered physical injury and physical sickness, loss of enjoyment of life, pain and suffering, disfigurement, humiliation, fear, anxiety, torment, degradation, embarrassment, shock, loss of self-esteem, medical expenses, severe mental and emotional distress, attorneys' fees and other pecuniary and non-pecuniary losses. Mr. Parish has sustained serious and permanent injuries, which will likely result in permanent disability, the nature and extent of which has yet to be determined. Mr. Parish is informed and believes and thereon alleges that he will continue to incur medical expenses in the future, the amount of which is not presently ascertained.

119. As a direct and legal result of the aforementioned acts, Mr. Parish is entitled to statutory damages under California Civil Code Section 52.1, as well as compensatory damages as alleged herein and attorney's fees

## NINTH CAUSE OF ACTION
## BATTERY
## (Against CHP and Officer Ayon)

120. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

121. CHP, through Officer Ayon, engaged in a battery of Mr. Parish by unnecessarily tightening the handcuffs on Mr. Parish behind his back, thereby touching him against his consent with intent to harm and offend him.

122. Mr. Parish was harmed by this conduct and a reasonable person in Mr. Parish's situation would have been harmed and offended by this conduct.

123. Said harmful or offensive contact included the use of unreasonable force under the totality of the circumstances, including the harmlessness of Mr. Parish's conduct, the lack of immediate threat posed by Mr. Parish, and the fact that Mr. Parish was not actively resisting arrest or attempting to evade arrest.

124. As a direct and proximate cause of the aforementioned acts, Mr. Parish was injured as set forth above.

125. As a direct and proximate result of the aforementioned conduct, Mr. Parish was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat him.

126. The injuries incurred by Mr. Parish entitle Mr. Parish to compensatory and punitive damages according to proof as to Defendant Officer Ayon and compensatory damages alone as to Defendant CHP, all according to proof at the time of trial.

127. The acts described herein constitute battery, actionable under the laws of California for which CHP and Officer Ayon are liable under California Civil Code §§ 815.2 and 820, and Penal Code §§ 242 and 835a.

## TENTH CAUSE OF ACTION

## FAILURE TO PERFORM MANDATORY DUTY (CAL. GOV. CODE § 815.6)

## (Against CHP, County of Ventura and VCSO)

128. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

129. By using excessive force, not intervening to avoid excessive force and failing to render timely medical care, CHP, County of Ventura and VCSO breached

their mandatory duties. As a result of the breaches of their mandatory duties, Mr. Parish was injured.

130. By the conduct described herein, Defendants breached the duty to not use excessive force as imposed on Defendants by Cal. Penal Code Section 835(a), by Cal. Code Regs. tit. 15 § 3268.2, by CHP's HPM 70.6, Chapter 1 (4) and (8), and by the County's/VCSO's Policy Manual § 300.3 and 300.21.

131. Penal Code Section 835(a) is a statute; Cal. Code Regs. tit. 15 § 3268.2 is a regulation as defined under California Government Code Section 811.6; CHP's HPM 70.6, Chapter 1 (6) and the County's/VCSO's Policy Manual § 300.6 are enactments.

132. CHP's HPM 70.6, Chapter 1 (4) provides, in relevant part, the following:

> a. Use of Force–General. It is the policy of the Department that officers may use force which is objectively reasonable to defend themselves or others, affect an arrest or detention, prevent escape, or overcome resistance. An officer may only use a level of force that they reasonably believe is proportional to the seriousness of the suspected offense or the reasonably perceived level of actual or threatened resistance. An officer who makes or attempts to make an arrest need not retreat or desist from their efforts by reason of the resistance or threatened resistance of the person being arrested. …Officers need not wait for injury to occur to themselves or the public before taking action to prevent it.

133. The County's/VCSO's Policy Manual § 300.3 provides, in relevant part, the following:

> Deputies shall use only that amount of force that reasonably appears necessary given the facts and totality of the circumstances known to or perceived by the deputy at the time of the event to accomplish a legitimate law enforcement purpose (Penal Code § 835a).

134. By the conduct described herein, CHP also breached a duty in failing to take immediate action to stop the excessive force as imposed on CHP by HPM 70.6, Chapter 1 (8).

135. HPM 70.6, Chapter 1 (8) is an enactment which provides, in relevant part, the following:

> INVOLVEMENT IN OR WITNESSING EXCESSIVE FORCE. a. Officer Responsibility. When officers are involved in or witness an incident in which they believe excessive force is currently or may have been used by **any** peace officer, they shall take immediate action to stop the excessive force.
> (1) The officer's actions shall be reasonable and prudent, based upon the circumstances.
> (2) The officer's actions shall include verbal and/or physical intervention necessary to stop the use of excessive force.
> (3) Following the incident, the officer shall immediately notify a CHP supervisor and submit a report, in accordance with GO 100.39, thoroughly documenting the events.
>
> (Original emphasis.)

136. By the conduct described herein, the County and VCSO also breached the duty to take immediate action to stop the excessive force as imposed on them by the County/VCSO's Policy Manual 300.2.1.

137. Policy Manual 300.2.1 is an enactment which provides, in relevant part, the following:

> Any deputy present and observing another law enforcement officer or an employee using force that is clearly beyond that which is necessary, as determined by an objectively reasonable deputy under the circumstances, shall, when in a position to do so, intercede to prevent the use of unreasonable force.
>
> When observing force used by a law enforcement officer, each deputy should take into account the totality of the circumstances and the possibility that other law enforcement officers may have additional information regarding the threat posed by the subject (Government Code § 7286(b)).

138. By the conduct described herein, CHP breached the duty to arrange for a medical examination whenever a subject appears to be in need of medical attention as imposed on CHP by CHP's HPM 70.6, Chapter 1 (6).

139. HPM 70.6, Chapter 1 (6) is an enactment which provides, in relevant part, the following:

> a. Following a use of force incident which an officer reasonably believes has resulted in injury, and once officer safety is no longer a concern, they shall provide medical care within their scope of practice and/or arrange for further medical care by emergency medical services personnel or a medical care facility.
> b. If required, subjects may be transported to a medical care facility in a patrol vehicle or ambulance for medical care or clearance.
> c. Officers shall arrange for a medical examination whenever a subject appears to be in need of medical attention.

140. By the conduct described herein, the County and VCSO breached the duty to arrange for a medical examination whenever a subject appears to be in need of medical attention as imposed on them by the County's/VCSO's Policy Manual § 300.6.

141. Policy Manual § 300.6 is an enactment which provides, in relevant part, the following:

> Once it is reasonably safe to do so, properly trained deputies should promptly provide or procure medical assistance for any person injured or claiming to have been injured in a use of force incident (Government Code § 7286(b)).
>
> Prior to booking or release, medical assistance shall be obtained for any person who exhibits signs of physical distress, who has sustained visible injury, expresses a complaint of injury or continuing pain, or who was rendered unconscious. Any individual exhibiting signs of physical distress after an encounter should be continuously monitored until he/she can be medically assessed.

142. The aforementioned mandatory duties established by statute, regulation and enactments were designed to protect civilians like Mr. Parish against the injury and lack of medical care he suffered. The aforementioned mandatory duties therefore comply with Government Code Section 815.6's mandate that the enactments' benefit to the Mr. Parish be not merely incidental to the enactment's protective purpose.

143. The wrongful conduct by CHP, County of Ventura and VCSO were a substantial factor in causing Mr. Parish's harm.

144. As a direct and legal result of the acts and omissions of CHP, County of Ventura and VCSO, Mr. Parish has suffered physical injury and physical sickness, loss of earnings and earnings capacity, loss of enjoyment of life, pain and suffering, disfigurement, humiliation, fear, anxiety, torment, degradation, embarrassment, shock, loss of self-esteem, medical expenses, severe mental and emotional distress, attorneys' fees and other pecuniary and non-pecuniary losses. Mr. Parish has sustained serious and permanent injuries, which will likely result in permanent disability, the nature and extent of which has yet to be determined. Mr. Parish is informed and believes and thereon alleges that he will continue to incur medical expenses in the future, the amount of which is not presently ascertained.

## ELEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Against All Defendants)

145. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

146. By engaging in the acts alleged herein, the Defendants engaged in outrageous conduct with intent to or a reckless disregard of the probability of causing Mr. Parish to suffer emotional distress.

147. As a direct, proximate and foreseeable result of the aforementioned conduct, Mr. Parish has suffered severe emotional distress and the outrageous conduct was the cause of the emotional distress suffered by Mr. Parish.

148. The conduct of Officer Ayon, Officer Johnston and Does 1-100 also amounts to oppression, fraud or malice within the meaning of Civil Code section 3294 *et seq.* and punitive damages should be assessed against Officer Ayon, Officer Johnston and Does 1-100 for the purpose of punishment and for the sake of example.

## TWELFTH CAUSE OF ACTION
## NEGLIGENCE

**(Against All Defendants)**

149. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

150. Defendants owed a duty of care towards Mr. Parish in which they were required to act reasonably towards him. (Civ. Code § 1714(a).) The duty of care owed includes but is not limited to: the duty to refrain from using excessive force, the duty to use reasonable care in handcuffing an elderly, non-threatening citizen, the duty to render medical aid, and the duty to intervene upon notice of excessive force by a CHP officer.

151. By their conduct above, Defendants breached the duty of care they owed to Mr. Parish.

152. Defendants' negligence was a direct and legal cause of injury to Mr. Parish.

153. Mr. Parish is further informed and believes and thereon alleges that Defendants knew, or in the exercise of reasonable care should have known, that the excessive use of force, including handcuffing an elderly man when he was not a threat to anyone, posed a dangerous and unreasonable risk of injury. Yet Defendants negligently failed to instruct and train their officers, staff, employees, agents, and other representatives, in the proper use of force and proper procedures for dealing with elderly, fragile persons such as Mr. Parish.

154. As a direct and legal result of the acts and omissions of Defendants, Mr. Parish has suffered physical injury and physical sickness, loss of enjoyment of life, pain and suffering, humiliation, fear, anxiety, torment, degradation, embarrassment, shock, loss of self-esteem, medical expenses, severe mental and emotional distress, attorneys' fees and other pecuniary and non-pecuniary losses. Mr. Parish has sustained serious and permanent injuries, which will likely result in permanent disability, the nature and extent of which has yet to be determined.

**THIRTEENTH CAUSE OF ACTION**
**NEGLIGENT SUPERVISION, TRAINING, HIRING AND RETENTION**

**(Against CHP, County of Ventura and VCSO)**

155. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

156. CHP, County of Ventura and VCSO had a duty to hire, retain and supervise officers, employees and/or agents who refrain from the conduct and/or omissions alleged herein.

157. CHP, County of Ventura and VCSO had a duty to train officers, employees and/or agents to refrain from the conduct and/or omissions alleged herein.

158. CHP, County of Ventura and VCSO breached these duties, causing the conduct alleged herein.

159. As a direct and proximate result of the failures of CHP, County of Ventura and VCSO, Mr. Parish endured pain, suffering, physical injury, and emotional distress as alleged herein.

160. As a direct and proximate result of the conduct of CHP, County of Ventura and VCSO, Mr. Parish was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and to treat his injuries and did incur medical, hospital and professional and incidental expenses, all according to proof at the time of trial.

**PRAYER FOR RELIEF**

**WHEREFORE,** Mr. Parish prays for judgment and damages against each of the Defendants as follows:

1. General damages in an amount to be determined by proof at trial;
2. Past and future medical and related expenses in an amount to be determined by proof at trial;
3. Future lost earnings in an amount to be determined by proof at trial;
4. Impairment of earning capacity in an amount to be determined by proof at trial;

5. Punitive damages from non-government entity Defendants pursuant to applicable law;

6. Reasonable attorney's fees pursuant to applicable law;

7. Prejudgment and post-judgment interest, including but not limited to, California Civil Code section 3288; and

8. Any other and further relief that the Court considers just and proper.

## DEMAND FOR JURY TRIAL

161. Plaintiff hereby requests a trial by jury as to all claims for monetary damages.

DATED: February 16, 2023 The Bloom Firm

/s/LISA BLOOM
Lisa Bloom
Arick Fudali
Alan Goldstein
Attorneys for Plaintiff JOHN PARISH